IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| SAMUEL GREGORY DORSEY, | ) |
| Petitioner, | ) |
| | ) NO. 3:21-cv-00462 |
| v. | ) |
| | ) JUDGE CAMPBELL |
| JASON CLENDENION, Warden | ) |
| Respondent. | ) |

## MEMORANDUM

Petitioner Samuel Gregory Dorsey filed a pro se petition under 28 U.S.C. § 2254 for a writ of habeas corpus (Doc. No. 1) and Respondent filed an Answer. (Doc. No. 13). For the following reasons, Petitioner is not entitled to relief under Section 2254 and this case will be **DISMISSED**.

## I. BACKGROUND

A May 2016 indictment charged Petitioner with one count of aggravated sexual battery based on conduct occurring between October 2004 and October 2005. (Doc. No. 10-1 at 3–4). Petitioner entered a negotiated plea agreement in which he pleaded guilty to the lesser included offense of *attempted* aggravated sexual battery. (*Id.* at 5–9). In exchange for Petitioner's plea, he received a sentence including seven years' incarceration at 60% release eligibility, a lifetime of community supervision, and placement on the sexual offender registry. (*Id.* at 5, 7). This sentence was out-of-range by the agreement of the parties.[1]

The State gave a factual basis for the plea, testifying that the proof at trial would have shown the following with regard to the victim: she was the daughter of Petitioner's girlfriend; she

---

[1] The trial court called this type of plea—pleading guilty to a lesser included offense and accepting a sentence above the normal statutory range for that offense—a "State v. Hicks" plea. (Doc. No. 10-1 at 5; Doc. No. 10-3 at 13–15); *see Hicks v. State*, 945 S.W.2d 706, 706 (Tenn. 1997) (finding plea-bargained out-of-range sentences valid when the plea agreement was "entered voluntarily and knowingly").

"disclosed three specific incidents" of sexual abuse by Petitioner that occurred when she was age six; she described an incident of Petitioner touching her thigh and eventually touching her "lady parts which she referred to as NoNo"; she circled "the vaginal area on an anatomical drawing as the area she referred to as lady parts and the NoNo area"; and she stated that Petitioner "only touched on the outside of her vaginal area and never on the inside." (Doc. No. 10-3 at 19–20). The court then accepted Petitioner's guilty plea and imposed judgment accordingly. (*Id.* at 21).

Petitioner filed a pro se post-conviction petition (Doc. No. 10-1 at 10–19), followed by a counseled amended petition. (*Id.* at 25–26). The court held an evidentiary hearing (Doc. No. 10-2) and denied relief. (Doc. No. 10-1 at 31–44). The Tennessee Court of Criminal Appeals (TCCA) affirmed, *Dorsey v. State*, No. M2018-01610-CCA-R3-PC, 2020 WL 1230879 (Tenn. Crim. App. Mar. 13, 2020), and the Tennessee Supreme Court denied Petitioner's application for permission to appeal. (Doc. No. 10-9).

## II. CLAIMS

The Court liberally construes the Petition to assert the following claims:

1. Petitioner's plea was unknowing and involuntary. (Doc. No. 1 at 11).
2. Trial counsel provided ineffective assistance by:
   A. Failing to adequately investigate the case (*id.* at 5);
   B. Coercing Petitioner to plead guilty (*id.* at 5, 11); and
   C. Telling Petitioner of a change in the plea offer the day of the hearing. (*Id.* at 5).

## III. LEGAL STANDARD

Federal habeas relief for state prisoners is governed by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). AEDPA sets a very high bar for granting federal relief on claims "adjudicated on the merits" in state court. *Harrington v. Richter*, 562 U.S. 86, 97 (2011).

2

Under AEDPA, such a claim cannot be the basis for federal relief unless the state court's decision was: (1) "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States"; or (2) "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

Under Section 2254(d)(1), a state court's decision is "contrary to" clearly established federal law "'if the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases' or 'if the state court confronts a set of facts that are materially indistinguishable from a decision [of the Supreme Court] and nevertheless arrives at a [different result].'" *Hill v. Curtin*, 792 F.3d 670, 676 (6th Cir. 2015) (en banc) (quoting *Lockyer v. Andrade*, 538 U.S. 63, 73 (2003)). "Under the 'unreasonable application' clause of [Section] 2254(d)(1), habeas relief is available if 'the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case.'" *Id.* (quoting *Harris v. Haeberlin*, 526 F.3d 903, 909 (6th Cir. 2008)). A state court's application is not unreasonable under this standard simply because a federal court finds it "incorrect or erroneous"; instead, the federal court must find that the state court's application was "objectively unreasonable." *Id.* (quoting *Wiggins v. Smith*, 539 U.S. 510, 520–21 (2003)).

To grant relief under Section 2254(d)(2), a federal court must find that "the state court's factual determination was 'objectively unreasonable' in light of the evidence presented in the state court proceedings." *Young v. Hofbauer*, 52 F. App'x 234, 236 (6th Cir. 2002). State court factual determinations are unreasonable only "if it is shown that the state court's presumptively correct factual findings are rebutted by 'clear and convincing evidence' and do not have support in the record." *Pouncy v. Palmer*, 846 F.3d 144, 158 (6th Cir. 2017) (quoting *Matthews v. Ishee*, 486

3

F.3d 883, 889 (6th Cir. 2007)). "[I]t is not enough for the petitioner to show some unreasonable determination of fact; rather, the petitioner must show that the resulting state court decision was 'based on' that unreasonable determination." *Rice v. White*, 660 F.3d 242, 250 (6th Cir. 2011) (citing *Byrd v. Workman*, 645 F.3d 1159, 1172 (10th Cir. 2011)).

## IV. ANALYSIS

Respondent argues that the Petition should be dismissed because it is untimely and meritless. (Doc. No. 13 at 1). The Court agrees that the Petition is meritless, so it will be dismissed on that basis.[2]

### A. Claim 1—Validity of Guilty Plea

Petitioner asserts that his guilty plea was not knowing and voluntary. (Doc. No. 1 at 11). The TCCA rejected this claim on the merits, so AEDPA deference applies. *See* 28 U.S.C. § 2254(d).

The federal standard governing a challenge to the knowing and voluntary nature of a guilty plea comes from *Boykin v. Alabama*, 395 U.S. 238 (1969). *See King v. Berghuis*, 744 F.3d 961,

---

[2] The Court rejects Respondent's timeliness argument because Petitioner's judgment form lacks a "file-stamped" date. (*See* Doc. No. 10-1 at 5). Contrary to Respondent's assumption (*see* Doc. No. 13 at 10), Tennessee courts count the "file-stamped" date as the date a judgment was entered, not the date the judgment form was signed by a judge. *See State v. Kimble*, No. W2012-00407-CCA-R3CD, 2013 WL 3795949, at *4 (Tenn. Crim. App. July 22, 2013) ("[O]nly a 'file-stamp' or other similarly designated marking by the trial court clerk can suffice to show what date the judgment was filed. A handwritten notation on the judgment form above the pre-printed 'Date of Entry of Judgment' without being signed by the trial court clerk is not an indication of when the judgment was filed."); *but see State v. Potter*, No. E2015-00013-CCA-R3-CD, 2016 WL 879075, at *20 (Tenn. Crim. App. Mar. 8, 2016) (relying on trial court clerk's minute entries to decide date of entry for judgments without "file-stamped" dates). The entry date of a state court judgment is an essential piece of information for a federal habeas court's timeliness analysis in a case like this—where the applicable subsection of the statute of limitations is 28 U.S.C. § 2244(d)(1)(A), and where the defendant did not pursue direct review. In such a case, the federal habeas deadline starts running when the time for pursuing direct appeal expired. *See* 28 U.S.C. § 2244(d)(1)(A). That expiration date is a matter of state law. *See Gonzalez v. Thaler*, 565 U.S. 134, 152 (2012). State law here establishes that Petitioner's time for pursuing a direct appeal expired "30 days after the date of entry of the judgment appealed from." *See* Tenn. R. App. P. 4(a). Because the entry date of Petitioner's judgment is unknown, the Court lacks the information necessary to determine the expiration date of his direct appeal period. So the Court cannot conclude, based on the available record, that the Petition is untimely.

965 (6th Cir. 2014) (citing *Boykin*, 395 U.S. at 242–44) (explaining that a *Boykin* claim requires a court to determine "whether the record demonstrates that the defendant's plea was entered into knowingly, intelligently, and voluntarily"). "The longstanding test for determining the validity of a guilty plea is 'whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant.'" *Hill v. Lockhart*, 474 U.S. 52, 56 (1985) (quoting *North Carolina v. Alford*, 400 U.S. 25, 31 (1970)); *see also Railey v. Webb*, 540 F.3d 393, 417 (6th Cir. 2008). The defendant must "understand the nature of the charges against him and the consequences of pleading guilty, including the possible punishments and loss of other rights." *Fitzpatrick v. Robinson*, 723 F.3d 624, 639 (6th Cir. 2013) (collecting cases).

The TCCA properly identified this governing precedent and rejected Petitioner's claim by adopting the post-conviction court's ruling. *See Dorsey*, 2020 WL 1230879, at *8 (citing *Boykin*, 395 U.S. at 243; *Alford*, 400 U.S. at 31). The post-conviction court ruled:

> When the Petitioner entered a plea of guilty in this case, the Court made inquiries pursuant to Tenn. R. Crim. Pro. 11 regarding the Petitioner's understanding of the nature of the charge to which he was pleading, the sentence he was receiving, the potential sentence on the charged offense, his right to have a trial and confront witnesses, whether he understood his rights, whether his lawyer explained the details of the plea, and whether he was entering the plea voluntarily. Under oath, the Petitioner responded positively to the Court's inquiry. At the evidentiary hearing, the Petitioner testified that he understood various aspects of what he initially thought the plea would be, including certain statutory conditions required for convictions for a charge of this nature, and the waiver of pre-trial jail credit. While the Petitioner now contends that he was not aware that he was pleading to a sentence of seven years, the record reflects that at the time that he entered the plea, he responded under oath that he understood the agreed upon sentence of seven years. Additionally, the plea petition signed by the Petitioner reflects the agreed upon sentence of seven years. Because it appears from the record that at the time the Petitioner entered the plea that he understood the plea agreement and consequences, this Court does not find that the Petitioner proved by clear and convincing evidence that his plea was unknowingly, involuntarily, and unintelligently entered.

(Doc. No. 10-1 at 43–44).

5

This ruling was reasonable. When Petitioner pleaded guilty, he testified that he understood the offense of conviction and the specific sentence being imposed. (Doc. No. 10-3 at 14–15). The court asked him if he understood the rights he was giving up, including the right to a jury trial, to confront his accuser, to testify or not testify, to call witnesses, and to appeal any finding of guilt by the jury. (*Id.* at 15–16). Petitioner responded, "Yes, sir." (*Id.* at 17). Petitioner testified that he read and understood the signed plea agreement (*id.* at 17–18), through which Petitioner agreed that "no person has pressured, forced, threatened, or intimidated [him] into pleading 'GUILTY.'" (Doc. No. 10-1 at 7). Petitioner's attorney also testified at the plea hearing that he believed Petitioner's plea to be knowing and voluntary. (Doc. No. 10-3 at 18). "[T]he representations of the defendant, his lawyer, and the prosecutor at [a plea] hearing, as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings." *Williams v. Davis*, No. 23-3066, 2023 WL 4759254, at *1 (6th Cir. June 8, 2023) (quoting *Blackledge v. Allison*, 431 U.S. 63, 74 (1977)). Petitioner, in short, has not overcome that barrier here. *See Wilson v. Fender*, No. 20-4168, 2021 WL 3642334, at *5 (6th Cir. May 11, 2021) (quoting *Ramos v. Rogers*, 170 F.3d 560, 566 (6th Cir. 1999) ("[A] defendant must be bound to the answers he provides during a plea colloquy.")). Accordingly, Claim 1 will be denied.

B. Claim 2—Ineffective Assistance of Counsel

Petitioner asserts that trial counsel was ineffective in several ways. Under *Strickland v. Washington*, counsel's representation is constitutionally ineffective where a petitioner shows (1) deficient performance and (2) prejudice to the defendant. *Knowles v. Mirzayance*, 556 U.S. 111, 124 (2009) (citing *Strickland v. Washington*, 466 U.S. 448, 687 (1984)). Performance is deficient where it falls "below an objective standard of reasonableness." *Strickland*, 466 U.S. at 687–88. "[A] court must indulge a strong presumption that counsel's conduct falls within the wide range

of reasonable professional assistance; that is, the [petitioner] must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Id.* at 689 (citing *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)). To show prejudice when a petitioner asserts that "ineffective assistance led to the improvident acceptance of a guilty plea," he must "show 'that there is a reasonable probability that, but for counsel's errors, [the petitioner] would not have pleaded guilty and would have insisted on going to trial.'" *Lafler v. Cooper*, 566 U.S. 156, 163 (2012) (quoting *Hill*, 474 U.S. at 59). The Supreme Court has explained the heavy burden a petitioner bears in these circumstances:

> "Surmounting *Strickland*'s high bar is never an easy task," *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010), and the strong societal interest in finality has "special force with respect to convictions based on guilty pleas." *United States v. Timmreck*, 441 U.S. 780, 784 (1979). Courts should not upset a plea solely because of post hoc assertions from a defendant about how he would have pleaded but for his attorney's deficiencies. Judges should instead look to contemporaneous evidence to substantiate a defendant's expressed preferences.

*Lee v. United States*, 582 U.S. 357, 368–69 (2017).

Moreover, when a petitioner raises a claim of ineffective assistance in a federal habeas petition that the state court has already rejected on the merits, "[t]he pivotal question" is not "whether defense counsel's performance fell below *Strickland*'s standard," but "whether the state court's application of the *Strickland* standard was unreasonable" under AEDPA. *Harrington*, 562 U.S. at 101. This amounts to a "'doubly deferential' standard of review that gives both the state court and the defense attorney the benefit of the doubt." *Burt v. Titlow*, 571 U.S. 12, 15 (2013) (quoting *Cullen v. Pinholster*, 563 U.S. 170, 190 (2011)).

1. Claim 2.A—Investigating the Case

Petitioner asserts that trial counsel failed to investigate his case, including by not interviewing potential witnesses who Petitioner asked him to call. (Doc. No. 1 at 5). The TCCA

7

rejected this claim on the merits. *See Dorsey*, 2020 WL 1230879, at *7–8. So AEDPA deference applies. *See* 28 U.S.C. § 2254(d).

> The TCCA rejected this claim on deficiency and prejudice grounds:
>
> The post-conviction court accredited trial counsel's testimony that he asked a defense investigator to locate and interview the victim, the victim's mother, and the victim's grandmother, but the investigator was unable to locate the witnesses. Trial counsel also stated that even if the investigator had located the witnesses, they may not have agreed to speak with him. The post-conviction court noted that "[w]ith a delay [in reporting] of more than ten years, . . . the ability to locate witnesses could have been substantially impaired. This delay was no fault of [trial counsel]. In attempting to locate witnesses through an investigator, [trial counsel] exercised reasonable means to investigate the case." Moreover, the Petitioner has failed to show that the witnesses could have been located and that they had information which would have been favorable to the Petitioner. *Black* [*v. State*], 794 S.W.2d [752,] 757 [(Tenn. Crim. App. 1990)]; *Maurice Johnson v. State*, No. E2017-00037-CCA-R3-PC, 2018 WL 784761, at *20 (Tenn. Crim. App. Oct. 10, 2017). We conclude that the Petitioner failed to establish that trial counsel was ineffective.

*Dorsey*, 2020 WL 1230879, at *8.

This ruling was reasonable. As for deficiency, trial counsel testified that he "asked [an] investigator to find three people and interview them," including the victim, the victim's mother, and the victim's grandmother. (Doc. No. 10-2 at 51–52). An investigator told counsel that these individuals could not be located. (*Id.* at 53–54, 60–61). The state court credited trial counsel's testimony on this subject, and this credibility finding is "entitled to great deference and must be sustained unless [it is] clearly erroneous, particularly in the context of AEDPA-limited habeas review." *Howell v. Hodge*, 710 F.3d 381, 386 (6th Cir. 2013) (internal citations and quotation marks omitted). Petitioner has not demonstrated that this credibility finding was clearly erroneous. And when crediting this testimony, the record reflects that trial counsel attempted to do what Petitioner claims he should have done, making the TCCA's deficiency ruling reasonable. And as for prejudice, the TCCA's ruling was reasonable because Petitioner did not present the desired witnesses at the evidentiary hearing. *See Hutchison v. Bell*, 303 F.3d 720, 748–49 (6th Cir. 2002)

8

(citations omitted) ("[A] petitioner cannot show deficient performance or prejudice resulting from a failure to investigate if the petitioner does not make some showing of what evidence counsel should have pursued and how such evidence would have been material."); *Tinsley v. Million*, 399 F.3d 796, 810 (6th Cir. 2005) ("In the absence of any evidence showing that [petitioner's proffered mitigating witnesses] would have offered specific favorable testimony, [petitioner] cannot show prejudice from counsel's strategy recommendation not to introduce this evidence.").

For all of these reasons, Claim 2.A will be denied.

### 2. Claim 2.B—Coercing a Guilty Plea

Petitioner asserts that counsel coerced him into pleading guilty. Unlike the prior claim, this claim was not squarely raised on post-conviction appeal, so the TCCA did not directly address it.[3] (*See* Doc. No. 10-4 at 27–32 (post-conviction appeal brief arguing claim of involuntariness without discussing counsel's performance, apart from his asserted failure to investigate)); *Dorsey*, 2020 WL 1230879, at *7 (characterizing Petitioner's only asserted ineffective-assistance claim on post-conviction appeal as arguing that counsel "failed to conduct an adequate investigation"). AEDPA deference, therefore, does not apply to this claim, and the Court reviews it de novo.[4]

---

[3] Respondent analyzes this claim as though it was rejected on the merits through the TCCA's ruling on the validity of Petitioner's plea. (*See* Doc. No. 13 at 13 n.2, 15–18). The Court does not see it that way. Although the two claims may rely on similar factual predicates, a claim of involuntariness under *Boykin* is legally distinct from a claim of ineffectiveness under *Strickland*. See *Simpson v. Warden, Lebanon Corr. Inst.*, No. 3:17-cv-300, 2018 WL 1532601, at *2 (S.D. Ohio Mar. 29, 2018), *rep. and recommendation adopted*, 2018 WL 3008340 (S.D. Ohio June 14, 2018) ("[T]he claim that a guilty plea was involuntary is not the same as a claim of ineffective assistance of trial counsel.").

[4] Federal habeas courts are usually prevented from considering the merits of an unexhausted claim where, as appears to be the case here, no state court remedies remain for the petitioner to raise it in state court. *See Jones v. Bagley*, 696 F.3d 475, 483 (6th Cir. 2012) (citing *O'Sullivan v. Boerckel*, 526 U.S. 838, 847–48 (1999) ("When a petitioner has failed to present a legal issue to the state courts and no state remedy remains available, the issue is procedurally defaulted.")). That is one of the ways in which a claim can be procedurally defaulted. *See id.* But "[p]rocedural default is generally an affirmative defense that the state must either assert or waive," *McNeill v. Bagley*, 10 F.4th 588, 595 (6th Cir. 2021), and Respondent has not asserted it here. (*See* Doc. No. 13). So the Court will consider Claim 2.B on the merits.

9

Even so, this claim is meritless. To restate, the indictment charged Petitioner with one count of aggravated sexual battery, but the victim "disclosed three specific incidents" of abuse. Trial counsel testified that his plea negotiations were guided by the concern that the prosecutor may obtain a superseding indictment with additional charges corresponding to other incidents. (Doc. No. 10-2 at 61–62). Such a superseding indictment would have limited Petitioner's leverage by increasing his sentencing exposure. (*See id.* at 63). Counsel testified that he explained this dynamic to Petitioner and conveyed a series of plea offers from the prosecutor to Petitioner. (*Id.* at 63–67). Petitioner himself did not contest these basic facts at the evidentiary hearing. (*Id.* at 30–31). In these circumstances, Petitioner's conclusory assertion of coercion in his federal habeas petition does not overcome the strong presumption of reasonable assistance afforded to attorneys under *Strickland*—a presumption that courts must apply strictly when judging performance during plea bargaining. *See Premo v. Moore*, 562 U.S. 115, 125–26 (2011) (explaining that "strict adherence" to *Strickland* is "essential" "at the plea bargain stage" due to "the potential for the distortions and imbalance that can inhere in a hindsight perspective" and "special difficulties in evaluating" judgment on a limited record in a way that accounts for counsel's accrued "insights borne of past dealings with the same prosecutor or court").

As discussed above with regard to Claim 1, moreover, the state courts reasonably concluded that Petitioner's plea was valid. They based this conclusion on the transcript of the plea hearing, during which Petitioner testified that he went over the plea petition with trial counsel. (*See* Doc. No. 10-3 at 18). This signed petition reflected that no one "pressured, forced, threatened, or intimidated" Petitioner into pleading guilty. (Doc. No. 10-1 at 7). In short, "Petitioner's bare claim that his counsel coerced him into pleading [guilty] is insufficient to overcome the presumption of verity which attaches to petitioner's statements during the plea colloquy." *See Shanks v.*

*Wolfenbarger*, 387 F. Supp. 2d 740, 750–51 (E.D. Mich. 2005) (citations omitted). Accordingly, reviewing this claim under a de novo *Strickland* standard, Petitioner has not carried his burden of demonstrating that counsel provided ineffective assistance by coercing him into pleading guilty.

### 3. Claim 2.C—Late Notice of a Change in Plea Offer

Petitioner asserts that counsel was ineffective by refusing to tell Petitioner about a change in the State's plea offer until the day of the plea hearing. (Doc. No. 1 at 5). The Court reviews this claim de novo for the same reasons as Claim 2.B.[5]

And like Claim 2.B, this claim is meritless. At the evidentiary hearing, Petitioner and trial counsel agreed on a few pertinent facts. They both testified that at least a week before the plea hearing, counsel conveyed a six-year plea offer from the State to Petitioner. (Doc. No. 10-2 at 18 (Petitioner); *id.* at 67–68 (counsel)). They also testified that on the day of the hearing, counsel explained to Petitioner that the State's offer was actually for seven years. (*Id.* at 19, 36 (Petitioner); *id.* at 69 (counsel)). Counsel explained this discrepancy by testifying that the prosecutor's six-year offer was the result of the prosecutor making a typo in an email. (*Id.* at 69). Regardless, both the plea petition and the transcript of the plea hearing clearly reflect that Petitioner was aware he was pleading guilty in exchange for a seven-year sentence. (Doc. No. 10-1 at 7 (plea petition); Doc. No. 10-3 at 14–15) (plea hearing)). The trial court's explanation of Petitioner's sentence at the plea hearing precludes any finding of prejudice arising from counsel's explanation of the State's plea offer. *See United States v. Carson*, 32 F.4th 615, 622 (6th Cir. 2022) (citing *Ramos*, 170 F.3d at 566; *Ewing v. United States*, 651 F. App'x 405, 410 (6th Cir. 2016) ("When an attorney erroneously promises a certain sentencing outcome, a defendant cannot show prejudice if he was

---

[5] Those reasons being: Petitioner did not squarely assert this claim on post-conviction appeal, the TCCA did not directly address it, and Respondent does not assert procedural default.

accurately advised during the plea colloquy.")). Petitioner, accordingly, has not demonstrated that counsel ineffectively communicated the State's plea offer.

## V. CONCLUSION

For these reasons, Petitioner is not entitled to relief under Section 2254 and this case will be **DISMISSED**.

Petitioner cannot appeal this adverse ruling without a certificate of appealability (COA). Habeas Rule 11(a). A COA requires "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003) (citing *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).

For the reasons stated throughout the Court's analysis, the Court concludes that Petitioner has not satisfied these standards and will **DENY** a COA.

An appropriate Order shall enter.

_____
WILLIAM L. CAMPBELL, JR.
UNITED STATES DISTRICT JUDGE